## CENTRAL UNION BANK OF SOUTH CAROLINA v. NEW YORK UNDERWRITERS' INS. CO.

### No. 3146.

Circuit Court of Appeals, Fourth Circuit.

Oct. 12, 1931.

Albert Lee Wardlaw, of Columbia, S. C. (Elliott, McLain, Wardlaw & Elliott, of Columbia, S. C., on the brief), for appellant.

Joseph L. Nettles, of Columbia, S. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

824

**PARKER, Circuit Judge.**

This was an action on a fire insurance policy instituted by the Central Union Bank of South Carolina, hereafter referred to as plaintiff, against the New York Underwriters' Insurance Company, hereafter referred to as defendant. Verdict was directed for defendant,. and, from judgment thereon, plaintiff has appealed.

The property insured belonged to one Anderson. He executed to the Palmetto Trust Company a bond with a mortgage on the property to secure same, which required that the mortgagor keep in force insurance on the property for the protection of the mortgagee. The Palmetto Trust Company assigned the bond and mortgage to the Metropolitan Life Insurance Company; and some time thereafter Anderson, pursuant to the provisions of the mortgage, procured and delivered to the latter company the policy here in suit. Attached to it was a New York standard mortgage clause making the loss, if any, payable to that company as its interest might appear. The pertinent part of the clause is as follows:

"Loss or damage, if any, under this policy, shall be payable to Metropolitan Life Insurance Company, New York, N. Y. as mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings of notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless. permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

On November 1, 1930, the Metropolitan Life Insurance Company assigned the bond and mortgage for full value to the Columbia National Bank, the predecessor of plaintiff,
and at the same time delivered to it the policy in question along with the other papers. Some time later the house covered by the policy was destroyed by fire; and plaintiff instituted this suit on the policy to recover thereunder. It is conceded that, prior to the fire, .the policy had become void as to Anderson, the insured.

The judge below based his action in directing a verdict for defendant upon the decision of this court in Orenstein v. Star Insurance Co. of America, 10 F.(2d) 754, in which it was held that the standard mortgage clause operates as a separate and independent insurance of the mortgagee's interest, and in express terms excepts the insurance from many or all of the deeds and delinquencies of the mortgagor. He was of opinion that, because such was the nature of the mortgagee's interest under the standard clause, it could not be assigned or transferred by the mortgagee along with the note and mortgage without the consent of the insurer. We do not think, however, that this conclusion follows.

Most rights under contracts are assignable. 2 R. C. L. 598. The exception is where rights are coupled with liabilities, with contracts for personal services or with contracts involving personal confidence. Fire insurance contracts are within the class last mentioned, and are held not to be assignable because of the confidence reposed by the insurer in the owner of the property. Thus, the owner may not sell the property and transfer the policy to the purchaser along with the title; for the insurer has not agreed to insure the property in the hands of the purchaser nor to assume the hazard involved in his ownership and possession. On the other hand, an assignment, not of the policy itself with its obligations, but of the owner's rights thereunder by way of pledge or otherwise as security for a debt, is held valid, in the absence of express restriction to the contrary; and the reason for this distinction is that such pledge or assignment does not affect the personal relationship, i. e., the ownership of the property by the insured, upon the faith of which the policy has been issued. Cooley's Briefs on Insurance (2d Ed.) vol. 2, pp. 1768, 1769; Ellis v. Kreutzinger, 27 Mo. 311, 72 Am. Dec. 270; True v. Manhattan Fire Ins. Co. (C. C.) 26 F. 83; Stokes v. Liverpool & London & Globe Ins. Co., 130 S. C. 521, 126 S. E. 649.

In the simple case of .pledge or assignment of a policy as security for a debt,

breach of the conditions of the policy by the insured defeats the rights of the assignee or pledgee, as well as the rights of the insured himself. To protect the assignee from forfeiture from such cause, the New York standard mortgage clause was devised, providing that the interest of the mortgagee under the policy should not be invalidated by any act or neglect of the mortgagor. While, as said in the Orenstein Case, this operates as a separate and independent insurance of the mortgagee's interest, there is in reality only one contract of insurance, the contract made with the mortgagor. The mortgage clause is a provision of that contract made for the benefit of a third person, the mortgagee, upon an agreement that the rights of the mortgagee thereunder are not to be invalidated by acts or neglect of the mortgagor. The question in the case here is: Are the rights of the mortgagee in the policy and under such clause assignable without the consent of the company? It is clear that the answer to this question depends upon whether with the rights of the mortgagee under the policy is involved such a relationship of personal confidence as would result in a change in the risk or hazard as a result of the transfer.

There can be no question, of course, but that the mortgagee may transfer with his debt such rights as arise from the pledge of the policy with him, or that the assignee of the mortgagee upon such transfer has the right to enforce same. The question is the narrower one as to whether the right of the mortgagee to recover on the policy, unaffected by the acts and defaults of the mortgagor, may be thus transferred; and this involves a consideration of the nature of the mortgage clause. Does that clause evidence a particular trust and confidence in the mortgagee, or is the trust rather in the mortgagor? Does the transfer of the rights of the mortgagee increase the hazard, or substitute a different risk, or is the hazard for all practical purposes the same? We think it clear that the latter is the case. The whole of the added protection of the clause relates, not to acts and omissions of the mortgagee, but to those of the mortgagor. Its purpose is that the policy shall stand as security for the debt unaffected by the mortgagor's conduct; and the agreement of the company to remain bound notwithstanding the acts or omissions of the mortgagor evinces confidence, not in the mortgagee but in the mortgagor, in whose possession the property remains, and the risk of whose conduct in violation of the terms of the policy is, to the extent of the debt, assumed by the company. So also the transfer of the debt and of the rights of the mortgagee in the policy does not affect the hazard; for the property remains in the possession of the insured, the mortgagor, and the right to apply the proceeds of the policy to the satisfaction of the debt, which is all that the mortgagee has, is neither increased nor diminished by the transfer.

The contention that the company contracted to pay the loss under the policy only to the mortgagee named is hypertechnical. We have seen that no relation of personal confidence is involved; and there would be as little reason in holding that the rights of the mortgagee in such case are not assignable as in holding that he might not assign a collateral note made payable to him, on the ground that only he had been named as payee.

Our conclusion that, in the absence of restriction in the policy or in the mortgage clause itself, the mortgagee may, without the consent of the company, transfer his rights under the policy along with the mortgage debt, is supported by all of the authorities which we have been able to find bearing directly on the question involved. Cooley's Briefs on Insurance (2d Ed.) vol. 2, 1768; 6 Couch on Insurance 5152; Whiting v. Burkhardt, 178 Mass. 535, 60 N. E. 1, 52 L. R. A. 788, 86 Am. St. Rep. 503; Breeyear v. Rockingham Farmers' Mut. Fire Ins. Co., 71 N. H. 445, 52 A. 860; Sun Fire Office v. Fraser, 5 Kan. App. 63, 47 P. 327, 329; Dickey v. Pocomoke City Nat. Bank, 89 Md. 280, 43 A. 33; Key v. Continental Ins. Co., 101 Mo. App. 344, 74 S. W. 162.

The rule established by the authorities is thus stated in Cooley's Briefs on Insurance (2d Ed.) vol. 2, pp. 1768, 1769: "In the absence of a special clause to the contrary, there is no reason why a collateral assignment without the consent of the company should not be valid as between the parties, operating, the courts say, as an 'equitable assignment.' * * * A pledge of a policy as security for a debt is similar in its effects to an assignment as collateral, and, like it, is valid without the consent of the company, even though such consent is necessary to the validity of an assignment (Ellis v. Kreutzinger, 27 Mo. 311, 72 Am. Dec. 270). And still less is the company's consent necessary where the pledge is made by a mortgagee or his assignee, to whom the loss has been made payable."

The Massachusetts case of Whiting v. Burkhardt, supra, is directly in point. That case dealt. with an insurance policy which forbade assignment and to which was attached a mortgagee clause of the same general character as- the New York standard clause. One Jewell was mortgagee of the property in question; and he assigned his mortgage and interest under the policy to plaintiff without the knowledge of the insurance company. The property was afterwards destroyed by fire. In upholding the right of the plaintiff to recover under the policy, notwithstanding a clause of the policy forbidding assignment thereof, the court said: .

"The transfer prohibited by this provision is a transfer of the contract of insurance,—that is to say, a transfer by Guptill and Burkhardt, the persons insured; not a transfer by Jewell, who was the person designated as the person entitled to receive the proceeds of the insurance, if any, due under the contract between the company on the one hand and Guptill and Burkhardt on the other. The distinction . is plainly and fully pointed out in Fogg v. Middlesex Ins. Co., 10 Cush. 337, 346; Phillips v. Insurance Co., 10 Cush. 350, 353; Mutual Life Ins. Co. of New York v. Allen, 138 Mass. 24, 28, 29, 52 Am. Rep. 245; Merrill v. Colonial Mut. Ins. Co., 169 Mass. 10, 13, 14, 61 Am. St. Rep. 268, 47 N. E. 439. What Jewell did by assigning his 'right- and interest in this policy' was not to transfer the policy, but to assign to another his right to receive the proceeds, if any, under it; the policy remained after the assignment, as it was before, the policy of Guptill and Burkhardt.

"We see no reason why Jewell should not make the assignment made by him. The policy was made payable to him as 'mortgagee, as his interest may appear.' He assigned his right to receive the proceeds, if any, to the assignee of the mortgage in question, and the plaintiff's right to receive the proceeds of the insurance was subject to this clause in the hands of the plaintiff, and could not be held by him for any debt other than the debt secured by that mortgage."

In the case of Breeyear v. Rockingham Farmers' Mutual Fire Ins. Co., supra, the policy, to which was attached a standard mortgage clause, had been avoided as to the mortgagor, just as here, by his violation of certain provisions. of the policy. The court, however, upheld the right of the as-

signee. of the mortgagee to recover under the policy, saying: "The assignments by Dearborn to Beaudry and by Beaudry to the bank were not assignments of the policy, but of the assignor's right as mortgagee to the insurance in case of loss as provided in the policy. The object of the provision, which prohibited an assignment of the policy without the assent of the company, was to prevent an increase of the moral risk by the substitution of a person for the insured in whose custody and care the property would be more likely to be burned. The assignments made no such substitution. Breeyear continued to be the owner and custodian of the property until he conveyed it to Beaudry, nearly three months after the date of the last assignment. The assignments did not conflict with the terms or the purpose of this provision, and afford no defense to the bank's claim. Whiting v. Burkhardt, . . 178 Mass. 535, 60 N. E. 1, 52 L. R. A. 788 [86 Am. St. Rep. 503]; May, Ins. § 379."

We have carefully considered the arguments of the learned counsel for appellee and have examined the cases upon which he relies, particularly Kase v. Hartford Fire Ins. Co., 58 N. J. Law, 34, 32 A. 1057; Kupfersmith v. Delaware Ins. Co., 81 N. J. Law, 664, 80 A. 561; and Royal Ins. Co. v. Drury, 150 Md. 211, 132 A. 635, 45 A. L. R. 582. We do not think, however, that the cases are in point on the question here involved; and the position of counsel is completely answered in our opinion by what was said by the Supreme Court of Kansas, in Sun Fire Office v. Fraser, supra, in the reasoning of which we concur. The court there said: "The remaining question in the case, then is, 'Is the mortgage clause broad enough to. indemnify the mortgagee or its assigns?' This we must answer in the affirmative. This clause reads as follows: 'Loss or damage, if any, under this policy, shall be payable to the English and American Mortgage Co., as mortgagee (or trustee), as interest may appear; and this insurance, as to the interest of- the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property, nor by any foreclosure or other proceedings, or notice of sale relating to the property, nor by any change in the title or ownership of the property: * * * Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.' This clause created an inde-

pendent and a new contract, and must be construed in connection with the mortgage. It is a conveyance for security only, granting to the English & American Mortgage Company, its successors and assigns, all the real estate therein mentioned to secure the repayment of the loan, and contains the usual clause as to insurance, viz.: 'Said parties of the first part agree to keep the buildings erected and to be erected on said premises, or any part thereof, insured in some insurance company that is satisfactory to the holder of said bond, in the sum of at least two-thirds of the value thereof, and cause the policy for such insurance to be assigned and delivered to the holder of said bond, to be held as collateral security thereto.' This expressly provides that the insurance was taken for the benefit of the holder of the bond, and was to be assigned and delivered to such person. And, as said by the learned referee, 'There are no words in the mortgage clause restricting the assigning by the mortgagee of this mortgage debt,' and, as the term 'mortgagee' is used throughout this clause, and there can be but one answer to the question, who is the mortgagee?—the owner of the security secured by the mortgage—it is certainly the intention of insurance companies, when they permit the attaching of a mortgage clause, that the policy shall accompany the mortgage, and add to its security in the hands of whoever may become the owner and holder of such negotiable bond, unless the clause contains express stipulations to the contrary."

For the reasons stated, we think that there was error in directing verdict for defendant; and the judgment below will accordingly be reversed and the cause remanded for further proceedings not inconsistent herewith.

Reversed.